**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **GABRIEL VELEZ, and GILBERT VELEZ, individually and on behalf of all others similarly situated,**<br><br>            **Plaintiffs,**<br><br>    -against-<br><br>**MEDRITE, LLC, and STAFFING BOUTIQUE, INC.**<br><br>            **Defendant.** | **No. 24 Civ. 2707 (GHW)(SN)**<br><br>**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** |

\

Gabriel Velez and Gilbert Velez  ("Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, alleges as follows:

**NATURE OF THE ACTION**

1.      This lawsuit seeks to recover underpayment caused by failure to pay minimum wages, overtime compensation, agreed upon wages, untimely wage payments, and other damages for Plaintiffs and similarly situated non-exempt hourly positions including but not limited to generalists (collectively, "Hourly Workers") who work or have worked for MedRite, LLC and Staffing Boutique, Inc. (together "MedRite" or "Defendants").

2.      To conduct their operations in New York, MedRite LLC utilizes Staffing Boutique, Inc. as a subcontracting company that provide the Hourly Workers for MedRite LLC's jobsites.

3.      Plaintiffs and similarly situated Hourly Workers worked at MedRite LLC jobsites

1

in New York via Staffing Boutique, Inc.

4.    Ultimately, however, MedRite LLC and Staffing Boutique, Inc are joint employers of Plaintiffs and other Hourly Workers.

5.    MedRite LLC's logo is clearly displayed on the pay records provided to Plaintiffs and similarly situated Hourly Workers. *See* **Exhibit A,** Gilbert Velez Pay Data.

6.    When Plaintiffs and similarly situated Hourly Workers had issues with their pay they were directed to contact supervisors employed by MedRite LLC, including William A. Medina via email. *See* **Exhibit B**, Emails Between Gilbert Velez and Willaim Medina.

7.    Employment Offer letters provided to Plaintiffs and similarly situated Hourly Workers bear both MedRite LLC's letterhead and Staffing Boutique, Inc.'s name. *See* **Exhibit C**, Offer Letters.

8.    MedRite LLC provides an Employee Handbook with their employment policies to Plaintiffs and similarly situated Hourly Workers. *See* **Exhibit D**, Employee Handbook.

9.    MedRite LLC posts job advertisements online for their generalist position which describes the job duties and requirements of employment at MedRite LLC. *See* **Exhibit E**, Job Advertisement.

10.    Plaintiffs and similarly situated Hourly Workers wore uniforms and ID Badges with MedRite LLC's logo.

11.    MedRite LLC has represented to New York City's Health and Hospital Finance Committee that they subcontract through Staffing Boutique, Inc. to provide their services.  *See* **Exhibit F**, Finance Committee Report.

12.    WARN notices provided by the City of New York describe Staffing Boutique, Inc. as "MedRite Staffing Boutique" in reference to MedRite LLC's joint control of employees with

Staffing Boutique, Inc. *See* **Exhibit G**.

13.    Plaintiffs and similarly Situated Hourly Workers hired by Defendants only work at job sites controlled by MedRite, LLC.

14.    The work of Hourly Workers is integral to MedRite LLC's business.

15.    MedRite LLC provides strict guidelines and instructions to Hourly Workers. These guidelines, printed on MedRite LLC's letterhead, provide detailed instructions that all Hourly Workers must follow and control their day-to-day job performance. *See* **Exhibit D**

16.    At all relevant times, Defendants compensated Plaintiffs and all other Hourly Workers on an hourly basis.

17.    Defendants failed to pay Plaintiffs and other Hourly Workers for all hours worked.

18.    In this regard, Defendants failed to provide Plaintiffs any compensation for the final weeks they worked, in violation of the FLSA's and NYLL's requirements to pay proper minimum wages and overtime.

19.    At all relevant times, Defendants have compensated Plaintiffs and all other Hourly Workers in New York on a bi-weekly basis.

20.    Despite being manual workers, Defendants failed to properly pay Plaintiffs and other Hourly Workers in New York their wages within seven calendar days after the end of the week in which these wages were earned as required by NYLL § 191.

21.    In this regard, Defendants failed to provide timely wages to Plaintiffs and all other similarly situated Hourly Workers in New York as required by the NYLL.

22.    Manual Workers as contemplated by NYLL § 191 are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

23.    As such, the failure to provide wages owed to Plaintiffs and all other similarly

situated Hourly Workers, according to NYLL § 191 constitutes an "especially acute injury." *See Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019).

24.    Defendants failed to provide Plaintiffs and similarly situated Hourly Workers with an accurate statement of wages pursuant to NYLL § 195(3), as for certain weeks, Plaintiffs and Hourly Workers received no pay statement at all.

25.    Plaintiffs relied on their paystubs to ensure that Defendants paid them the correct rate for the hours they worked.

26.    Defendants did not provide Plaintiffs with accurate wage statements in weeks in which they were not paid. In this regard, the failure to provide Plaintiffs with wage statements violated NYLL § 195(3).

27.    Due to Defendants' failure to provide the wage statements to Plaintiffs, and similarly situated Hourly Workers, were misinformed about the correct rate they were entitled to receive and hours they worked.

28.    Plaintiffs and similarly situated Hourly Workers could not know the exact amount of hours Defendants registered as work or the compensation they were due to receive due to Defendants' failure to provide paystubs.

29.    Defendants' failure to provide wage statements allowed Defendants to continue their unlawful wage and hour scheme without Plaintiffs' or similarly situated Hourly Workers' awareness that they were being underpaid. If Defendants had provided accurate wage statements, they could not have underpaid Plaintiffs or similarly situated Hourly Workers.

30.    Accordingly, Plaintiffs and similarly situated Hourly Workers are entitled to

statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, up to a total of five thousand dollars each pursuant to NYLL § 195(3).

31.    Plaintiffs bring this action on behalf of themselves and all other similarly situated Hourly Workers in New York pursuant to Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Labor Law, Article 6, §§ 190 *et seq.* ("NYLL").

## THE PARTIES

### Plaintiffs

#### Gabriel Velez

32.    Gabriel Velez is an adult individual who is a resident of the state of New York.

33.    Gabriel Velez was employed by Defendants as an Hourly Worker from in or around August 2023 to November 2023.

34.    Gabriel Velez is a covered employee within the meaning of the FLSA and the NYLL.

35.    A written consent for Gabriel Velez is being filed with this Class Action Complaint.

#### Gilbert Velez

36.    Gilbert Velez is an adult individual who is a resident of the state of New York.

37.    Gilbert Velez was employed by Defendants as an Hourly Worker from in or around August 2023 to January 2024.

38.    Gilbert Velez is a covered employee within the meaning of the FLSA and the NYLL.

39.    A written consent for Gilbert Velez is being filed with this Class Action Complaint.

**Defendants**

**MedRite, LLC**

40.     MedRite LLC is a domestic business corporation organized and existing under the laws of New York.

41.     MedRite LLC 's principal executive office is located at 919 2nd Avenue New York, New York 10017.

42.     MedRite LLC  was and is a covered employer within the meaning of the NYLL, and at all times relevant, employed Plaintiffs and similarly situated employees.

43.     MedRite LLC  has maintained control, oversight, and direction over Plaintiffs and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

44.     MedRite LLC applies the same employment policies, practices, and procedures to all Hourly Workers in its operation, including policies, practices, and procedures with respect to payment of wages.

45.     Upon information and belief, at all relevant times, MedRite LLC has had an annual gross volume of sales in excess of $500,000.

46.     At all times relevant, MedRite LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

47.     In this regard, employees for MedRite LLC regularly handled goods in interstate commerce, including, but not limited to, medical supplies, foodstuffs, water bottles, and other supplies produced outside the State of New York.

**Staffing Boutique, Inc.**

48.     Staffing Boutique, Inc. is a domestic business corporation organized and existing

under the laws of New York.

49.    Staffing Boutique, Inc.'s principal executive office is located at 99 Hudson Street, 5th Floor, New York, New York 10013

50.    Staffing Boutique, Inc. was and is a covered employer within the meaning of the NYLL, and at all times relevant, employed Plaintiffs and similarly situated employees.

51.    Staffing Boutique, Inc. has maintained control, oversight, and direction over Plaintiffs and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

52.    Staffing Boutique, Inc. applies the same employment policies, practices, and procedures to all Hourly Workers in its operation, including policies, practices, and procedures with respect to payment of wages.

53.    Upon information and belief, at all relevant times, Staffing Boutique, Inc. has had an annual gross volume of sales in excess of $500,000.

54.    At all times relevant, Staffing Boutique, Inc. has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

55.    In this regard, employees for Staffing Boutique, Inc. regularly handled goods in interstate commerce, including, but not limited to, medical supplies, foodstuffs, water bottles, and other supplies produced outside the State of New York.

**JURISDICTION AND VENUE**

56.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

57.    This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to

29 U.S.C. § 216(b).

58.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

## COLLECTIVE ACTION ALLEGATIONS

59.    Plaintiffs bring the First and Second Causes of Action, FLSA claims, on behalf of themselves and all similarly situated persons who work or have worked as Hourly Workers for MedRite who elect to opt-in to this action (the "FLSA Collective").

60.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the FLSA Collective for minimum wages and overtime wages for hours worked but not compensated, and/or compensated on an untimely basis.

61.    Consistent with Defendants' policies and patterns or practices, Plaintiff and the FLSA Collective were not paid the proper minimum wages for all hours worked, nor proper premium overtime compensation of 1.5 times their regular rate of pay for all hours worked beyond 40 per workweek.

62.    All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

63.    As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiffs and the FLSA Collective, minimum wages for all hours worked and proper overtime wages for all hour worked in excess of 40 hours

per workweek.

64. An employer "willfully violates the FLSA when it either new or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *See Young v. Cooper Cameron Corp.*, 586 F. 3d 201, 207 (2d Cir. 2009).

65. According to *Whiteside v Hover-Davis*, "a claim is facially plausible 'when the Plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *See* 995 F.3d 315, 323 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "For a Plaintiffs to nudge their claim 'across the line from conceivable to plausible,' [they] must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *See Id.* (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1995)).

66. Defendants' willful violation of the FLSA is evidenced by the clear nature of the violation – it is without question illegal to not pay employees for the hours they work.

67. Defendants knew or should have known that their wage and hour practices with regards to Hourly Workers violated the FLSA's overtime and minimum wage requirements. In this regard, district courts around the country, including district courts throughout New York, have repeatedly ruled that employs must be paid for all hours they work and must be paid in a timely manner.

68. To support their operations, Defendants either employ or contract multiple attorneys with the specific job duty of ensuring compliance with federal and state labor laws, or Defendants recklessly disregard these laws.

69. Accordingly, it is clear that Defendants recklessly disregarded the law, because their

substantial operation size does not allow for mere ignorance of their flagrant violation of the FLSA.

70.   As such, Defendants' failure to pay minimum wages and overtime wages, constitute willful violations of the FLSA.

## NEW YORK CLASS ACTION ALLEGATIONS

71.     Plaintiffs brings the Third, Fourth, Fifth, and Sixth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Hourly Workers for Defendants in New York between August 26, 2017[1] and the date of final judgment in this matter (the "New York Class").

72.     The members of the New York Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

73.     There are more than fifty members of the New York Class.

74.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class in separate actions.

75.     Plaintiffs and the New York Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the New York Class similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the New York Class.

---

[1]  This class period is due to Governor Cuomo's Executive Order that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

76.     Plaintiffs is able to fairly and adequately protect the interests of the New York Class and has no interests antagonistic to the New York Class.

77.     Plaintiffs is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

78.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

79.     Common questions of law and fact exist as to the New York Class that predominate over any questions only affecting Plaintiffs and/or each member of the New York Class individually and include, but are not limited to, the following:

(a)     whether Defendants failed to pay all agreed upon wages for hours worked by Plaintiffs and the New York Class;

(b)     whether Defendants correctly compensated Plaintiffs and the NYLL Class at time and one half their regular rate of pay for hours worked in excess of 40 per workweek;

(c)     whether Defendants correctly compensated Plaintiffs and the New York Class on a timely basis; and

(d)     whether Defendants failed to furnish Plaintiffs and the New York Class with accurate statements with every payment of wages, as required by the NYLL.

**PLAINTIFFS' FACTUAL ALLEGATIONS**

80.     Consistent with their policies and patterns or practices as described herein,

Defendants harmed Plaintiffs, individually, as follows:

**Gabriel Velez**

81.    Throughout his employment, Gabriel Velez was employed as an hourly worker in Manhattan.

82.    During his employment, Gabriel Velez was a non-exempt hourly worker paid on an agreed upon hourly basis of $22.00 per hour.

83.    Defendants failed to pay Gabriel Velez any compensation for the last three weeks he worked for Defendants.

84.    In this regard, Gabriel Velez worked multiple days without being paid **any** compensation.

85.    Defendants' policy of not paying Gabriel Velez caused his weekly pay rate to fall below the minimum wage.

86.    During Gabriel Velez's last three weeks worked for Defendants, he worked over forty hours per week.

87.    Accordingly, Defendants' failure to pay Gabriel Velez for his last three weeks of work resulted in a failure to pay his owed premium overtime compensation.

88.    During Gabriel Velez's employment, over twenty-five percent of his duties were physical tasks, including but not limited to: (1) gathering migrant's personal belongings; (2) moving boxes of supplies; (3) distributing water bottles; (4) delivering meals to migrants; (5) setting up/tearing down work stations; and (6) standing for long periods of time.

89.    Moreover, job advertisements for the position held by Gabriel Velez lists physical job duties including (1) setup, teardown, and cleanup of workstation; (2) distributing hygiene products, food and other necessities; (3) assisting with meal delivery, meal setup, meal breakdown,

and supplying snacks; (4) unboxing orders and distributing supplies; (5) and cleaning. *See* **Exhibit E**.

90.     Despite regularly spending more than twenty-five percent of his daily job duties performing these physical tasks, when Gabriel Velez was paid, he was compensated by Defendants on an untimely bi-weekly basis in contravention of the FLSA and NYLL § 191(1)(a).

91.     As a result of Defendants' untimely wage payments, Gabriel Velez was underpaid for the first seven days of each bi-weekly pay period, and thus Defendants paid Gabriel Velez on an untimely basis.

92.     Moreover, Gabriel Velez was denied the time-value of his money by Defendants' underpayments. Gabriel Velez was unable to invest, save, or purchase utilizing the wages he earned and was owed for all underpaid workweeks.

93.     Throughout his employment, Defendants failed to provide Gabriel Velez with accurate wage statements with each payment of wages as required by the NYLL.

94.     The failure to provide pay statements allowed Defendants to continue to carry on a scheme of underpaying Gabriel Velez and similarly situated Hourly Workers.

**Gilbert Velez**

95.     Throughout his employment, Gilbert Velez was employed as an hourly worker in Staten Island.

96.     During his employment, Gilbert Velez was a non-exempt hourly worker paid on an hourly basis of $22.00 per hour.

97.     Defendants failed to pay Gilbert Velez any compensation for the last two weeks he worked for Defendant.

98.     In this regard, Gilbert Velez worked multiple days without being paid **any**

compensation.

99.     Gilbert Velez attempted to address the failure to pay him with his supervisors via email. *See* **Exhibit B**

100.    Despite assurance that the failure to pay Gilbert Velez would be "escalated" to the payroll department, Gilbert Velez never received his owed wages for his last two weeks of work.

101.    Defendants' policy of not paying Gilbert Velez caused his weekly pay rate to fall below the minimum wage.

102.    During Gilbert Velez's last two weeks worked for Defendants, he worked over forty hours per week.

103.    Accordingly, Defendants' failure to pay Gabriel Velez for his two weeks of work resulted in a failure to pay his owed premium overtime compensation.

104.    During Gilbert Velez's employment, over twenty-five percent of his duties were physical tasks, including but not limited to: (1) gathering migrant's personal belongings; (2) moving boxes of supplies; (3) distributing water bottles; (4) delivering meals to migrants; (5) setting up/tearing down work stations; and (6) standing for long periods of time.

105.    Moreover, job advertisements for the position held by Gilbert Velez lists physical job duties including (1) setup, teardown, and cleanup of workstation; (2) distributing hygiene products, food and other necessities; (3) assisting with meal delivery, meal setup, meal breakdown, and supplying snacks; (4) unboxing orders and distributing supplies; (5) and cleaning. *See* **Exhibit E**.

106.    Despite regularly spending more than twenty-five percent of his daily job duties performing these physical tasks, Gilbert Velez was compensated by Defendants on an untimely bi-weekly basis.

107.    For example, for the period beginning on October 1, 2023 to October 14, 2023, Gilbert Velez was paid his lawfully earned wages on October 20, 2023. *See* **Exhibit A**.

108.    In this regard, Defendants failed to pay Gilbert Velez his wages earned from October 1, 2023 to October 7, 2023 by October 14, 2023 as required by the FLSA and NYLL § 191(1)(a).

109.    As a result of Defendants' untimely wage payments, Gilbert Velez was underpaid for the period of October 1, 2023 to October 7, 2023, and for every corresponding period where Defendants paid Gilbert Velez on an untimely basis.

110.    Moreover, Gilbert Velez was denied the time-value of his money by Defendants' underpayments. Gilbert Velez was unable to invest, save, or purchase utilizing the wages he earned and was owed for all underpaid workweeks.

111.    Throughout his employment, Defendants failed to provide Gilbert Velez with accurate wage statements with each payment of wages as required by the NYLL.

112.    The failure to provide pay statements allowed Defendants to continue to carry on a scheme of underpaying Gilbert Velez and similarly situated Hourly Workers.

<u>**FIRST CAUSE OF ACTION**</u>
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

113.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

114.    At all times relevant, Plaintiffs and the FLSA Collective were or have been employees, and Defendants was or have been an employer of Plaintiffs and the FLSA Collective, within the meaning of 29 U.S.C §§ 201 *et seq.*

115.    At all times relevant, Defendants have been an employer of Plaintiffs and the FLSA

Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

116.    Defendants failed to pay Plaintiffs and the FLSA Collective for all hours worked at no less than the applicable minimum wage.

117.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by being denied minimum wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

<u>SECOND CAUSE OF ACTION</u>
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

118.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

119.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of FLSA Collective.

120.    Plaintiff and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

121.    Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay for all hours worked in excess of 40 per workweek.

122.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied proper overtime compensation in amounts to be determined at trial, and are entitled to recovery of liquidated damages, attorneys' fees and costs, and

other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## THIRD CAUSE OF ACTION
### New York Labor Law – Failure to Pay Agreed Upon Wages
### (Brought on behalf of Plaintiffs and the New York Class)

123.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

124.   The wage provisions of Article 6 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs and the New York Class.

125.   Pursuant to NYLL, Article 6 § 191(1)(d), Defendants are required to pay Plaintiffs and the New York Class the wages they have earned in accordance with the agreed terms of their employment.

126.   Defendants failed to pay Plaintiffs and the New York Class the earned wages to which they are entitled to under the NYLL and the supporting New York State Department of Labor Regulations, pursuant to the agreed-upon terms of Plaintiffs' employment.

127.   Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendants their agreed-upon earned wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (Brought on behalf of Plaintiffs and the New York Class)

128.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

129.   The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiffs and the NYLL Class.

130.    Defendants failed to pay Plaintiffs and the NYLL Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate of pay, for all hours worked beyond 40 per workweek.

131.    In this regard, Defendants required Plaintiffs and the NYLL Class to perform work without compensation. Specifically, Defendants failed to pay Plaintiffs and the NYLL Class for time worked over forty hours per week.

132.    Due to Defendants' violations of the NYLL, Plaintiffs and the NYLL Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

<strong><u>FIFTH CAUSE OF ACTION</u></strong><br><strong>New York Labor Law – Failure to Pay Timely Wages</strong><br><strong>(Brought on behalf of Plaintiffs and the New York Class)</strong>

133.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

134.    The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiffs and the New York Class.

135.    Defendants failed to pay Plaintiffs and the New York Class on a timely basis as required by NYLL § 191(1)(a), which resulted in Plaintiffs and the New York Class being underpaid.

136.    Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendants the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and

post-judgment interest as provided for by NYLL § 198.

## SIXTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements
### (Brought on behalf of Plaintiffs and the New York Class)

137. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

138. Defendants failed to supply Plaintiffs and the New York Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and minimum rate or rates of pay if applicable; the number of hours worked per week, including hours worked if applicable; deductions; and net wages.

139. Due to Defendants' violations of NYLL § 195(3), Plaintiffs and the New York Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all generalists, and similar hourly positions

companywide who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for Defendant.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Unpaid minimum wages, unpaid overtime compensation, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiffs as representative of the New York Class and counsel of record as Class Counsel;

E.      Unpaid overtime wages, agreed upon wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.      Liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

G.      Liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

H.      Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiffs and the New York Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article § 198;

I.      Prejudgment and post-judgment interest;

J.      Reasonable attorneys' fees and costs of the action; and

K.      Such other relief as this Court shall deem just and proper.

Dated: New York, New York
        July 26, 2024

                                    Respectfully submitted,


                                     /s/ Brian S. Schaffer
                                    Brian S. Schaffer

                                    **FITAPELLI & SCHAFFER, LLP**
                                    Brian S. Schaffer
                                    Hunter G Benharris
                                    28 Liberty Street, 30th Floor
                                    New York, New York 10005
                                    Telephone: (212) 300-0375

                                    *Attorneys for Plaintiffs and*
                                    *the Putative Class*